IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **DEBBIE SUE WYCOFF,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) Case No. 21-cv-386-DES |
| | ) |
| **KILOLO KIJAKAZI,** | ) |
| **Acting Commissioner of the Social** | ) |
| **Security Administration,** | ) |
| | ) |
| **Defendant.** | ) |

**OPINION AND ORDER**

Pursuant to 42 U.S.C. § 405(g), Plaintiff Debbie Sue Wycoff ("Claimant") seeks judicial review of a final decision by the Commissioner of the Social Security Administration ("Commissioner") denying her claim for disability insurance benefits under Title II of the Social Security Act (the "Act"). For the reasons explained below, the Court REVERSES and REMANDS the Commissioner's decision denying benefits.

**I.    Statutory Framework and Standard of Review**

The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To be deemed disabled under the Act, a claimant's impairment(s) must be "of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

Social security regulations implement a five-step sequential process to evaluate a disability claim. 20 C.F.R. § 404.1520(a)(4). This process requires the Commissioner to consider:

(1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant suffers from a medically determinable severe impairment(s); (3) whether such impairment meets or medically equals a listed impairment set forth in 20 C.F.R. pt. 404, subpt. P, app. 1; (4) whether the claimant can perform her past relevant work considering the Commissioner's assessment of the claimant's residual functional capacity ("RFC"); and (5) whether the claimant can perform other work considering the RFC and certain vocational factors. 20 C.F.R. § 404.1520(a)(4)(i)-(v). The claimant bears the burden of proof through step four, but the burden shifts to the Commissioner at step five. *Lax v. Astrue,* 489 F.3d 1080, 1084. If it is determined, at any step of the process, that the claimant is or is not disabled, evaluation under a subsequent step is not necessary. *Williams v. Bowen,* 844 F.2d 748, 750 (10th Cir. 1988).

A district court's review of the Commissioner's final decision is governed by 42 U.S.C. § 405(g). The scope of judicial review under § 405(g) is limited to determining whether the Commissioner applied the correct legal standards and whether the Commissioner's factual findings are supported by substantial evidence. *See Noreja v. Soc. Sec. Comm'r,* 952 F.3d 1172, 1177 (10th Cir. 2020). Substantial evidence is more than a scintilla but means only "'such evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill,* 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229 (1938). In conducting its review, the Court "may neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Noreja,* 952 F.3d at 1178 (quotation omitted). Rather, the Court must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Flaherty v. Astrue,* 515 F.3d 1067, 1070 (10th Cir. 2007) (quotation omitted).

## II.     Claimant's Background and Procedural History

On October 14, 2019, Claimant applied for disability insurance benefits under Title II of the Act. (R. 15, 212-13). Claimant alleges she has been unable to work since August 30, 2019, due to diabetes, osteoarthritis of the lumbar and cervical spines with radiculopathy, fibromyalgia, depression, and carpal tunnel syndrome. (R. 212, 238). Claimant was 62 years old on the date of the ALJ's decision. (R. 26, 212). She has a college education and past work as a personnel manager. (R. 25, 239).

Claimant's claim for benefits was denied initially and on reconsideration, and she requested a hearing. (R. 81-108, 124-25). ALJ Steven M. Rachal conducted an administrative hearing and issued a decision on April 16, 2021, finding Claimant not disabled. (R. 15-26, 33-68). The Appeals Council denied review on October 29, 2021 (R. 1-6), rendering the Commissioner's decision final. 20 C.F.R. § 404.981. Claimant filed this appeal on December 30, 2021. (Docket No. 2).

## III.    The ALJ's Decision

The ALJ found at step one that Claimant had not engaged in substantial gainful activity since the alleged onset date of August 30, 2019. (R. 18). At step two, the ALJ found Claimant had the severe impairments of osteoarthritis, degenerative disc disease, obesity, and fibromyalgia. (*Id.*). Additionally, the ALJ found Claimant had the non-severe impairments of depression/adjustment disorder, diabetes mellitus II, hyperlipidemia, obstructive sleep apnea, carpal tunnel syndrome, hypertension, and hypothyroidism. (*Id.*). At step three, the ALJ found Claimant's impairments did not meet or equal a listed impairment. (R. 20-21).

Before proceeding to step four, the ALJ determined Plaintiff had the RFC to perform sedentary work as defined in 20 C.F.R. § 404.1567(a) with the following limitations:

> [T]he claimant can perform no more than occasional climbing, balancing, stooping, kneeling, crouching, or crawling. She can perform frequent reaching bilaterally. The claimant can have no more than occasional exposure to extreme cold or vibration. She can have no exposure to hazards, such as work at unprotected heights or around dangerous moving machinery. The claimant can have use of a cane for balance and ambulation over uneven terrain.

(R. 21). The ALJ provided a summary of the evidence that went into this finding. (R. 21-25).

At step four, based on the testimony of a vocational expert ("VE"), the ALJ concluded that Claimant could return to her past relevant work as a personnel manager as actually and generally performed. (R. 25). Accordingly, the ALJ concluded Claimant was not disabled. (*Id.*).

### IV.   Issues Presented

In her challenge to the Commissioner's denial of benefits, Claimant asserts the ALJ failed to: (i) consider all of Claimant's impairments at step two of the sequential analysis (Docket No. 12 at 2-5); (ii) account for all of Claimant's impairments and limitations in the RFC (*id.* at 4-8); (iii) properly evaluate the medical source opinion of Dr. Zeeshaan Khan (*id.* at 6); (iv) sufficiently determine the demands of Claimant's past relevant work (*id.* at 8); and (v) find her disabled under the Medical-Vocational Guidelines (the "Grids") (*id.*). The Court finds any error the ALJ may have made at step two regarding her impairments is harmless, but agrees the ALJ failed to properly account for some of Claimant's non-severe impairments in the RFC assessment.

### V.   Analysis

#### A.   Any Failure to Consider the Severity of all of Claimant's Impairments was Harmless Error at Step Two

Claimant contends the ALJ failed to consider her diagnosed carpal tunnel syndrome, polyneuropathy, C7 radiculopathy, chronic pain syndrome, and rheumatoid arthritis at step two of the sequential evaluation. (Docket No. 12 at 2-5). Claimant further contends the ALJ should have

4

found her depression/adjustment disorder to be a severe impairment at step two, rather than the non-severe impairment he identified. (*Id.* at 4-5).

The ALJ considers the "medical severity" of a claimant's impairments at step two of the sequential evaluation. 20 C.F.R. § 404.1520(a)(4)(ii). An impairment is "severe" if it significantly limits a claimant's ability to perform work activities. 20 C.F.R. § 404.1520(c). A claimant who does not have a severe medically determinable impairment, or a combination of impairments that is severe, is not disabled. 20 C.F.R. § 404.1520(a)(4)(ii). Claimant's burden at step two is a *de minimis* showing of impairment, but the Claimant must demonstrate "more than the mere presence of a condition or ailment." *Hinkle v. Apfel,* 132 F.3d 1349, 1352 (10th Cir. 1997).

In his written decision at step two, the ALJ identified several non-severe impairments including depression/adjustment disorder, diabetes mellitus II, hyperlipidemia, obstructive sleep apnea, carpal tunnel syndrome, hypertension, and hypothyroidism. (R. 18). Although the ALJ did not mention or make any findings regarding the severity of Claimant's polyneuropathy, C7 radiculopathy, chronic pain syndrome, and rheumatoid arthritis at step two, Claimant has not demonstrated a reversible error at this step. Since the ALJ found Claimant had at least one severe impairment and proceeded to the subsequent steps of his analysis, any failure in identifying additional medically determinable impairments at step two does not constitute reversible error. *See Allman v. Colvin,* 813 F.3d 1326, 1330 (10th Cir. 2016) ("[T]he failure to find a particular impairment severe at step two is not reversible error when the ALJ finds that at least one other impairment is severe."); *Carpenter v. Astrue,* 537 F.3d 1264, 1266 (10th Cir. 2008) ("[A]ny error here became harmless when the ALJ reached the proper conclusion that [the Claimant] could not be denied benefits conclusively at step two and proceeded to the next step of the evaluation sequence.").

B.   **ALJ Failed to Account for Claimant's Non-severe Mental Impairments and Carpal Tunnel Syndrome in Assessing the RFC**

The rationale for applying harmless error at step two is that the ALJ is required to consider the functional impact of all a claimant's medically determinable impairments, including non-severe impairments, when assessing the RFC later in the sequential analysis. In other words, if the RFC subsequently accounts for the functional limitations resulting from the previously omitted impairment, then the step two omission would not affect the outcome of the ALJ's decision because the RFC would not change. *See Grotendorst v. Astrue,* 370 F. App'x 879, 883 (10th Cir. 2010) (explaining that a step two error is "usually harmless" if the ALJ "finds another impairment is severe and proceeds to the remaining steps of the evaluation . . . because *all* medically determinable impairments, severe or not, must be taken into account at those later steps"). Therefore, Claimant further contends the ALJ's failure to properly consider her carpal tunnel syndrome, polyneuropathy, C7 radiculopathy, chronic pain syndrome, rheumatoid arthritis, and depression/adjustment disorder at step two impaired his analysis at subsequent steps of the sequential evaluation. Specifically, Claimant argues the ALJ failed to consider all her impairments in combination when assessing the RFC and, in turn, failed to present a hypothetical question to the VE that included all her limitations.

A claimant's RFC is her "*maximum* remaining ability to do sustained work activities in an ordinary work setting" for 8 hours a day, 5 days per week despite her impairments. Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *2 (July 2, 1996). In assessing the RFC, "the ALJ must consider the combined effect of all of the claimant's medically determinable impairments, *whether severe or not severe.*" *Wells v. Colvin,* 727 F.3d 1061, 1065 (10th Cir. 2013); *see also* 20 C.F.R. § 404.1545(a)(2) ("We will consider all of [a claimant's] medically determinable impairments of which we are aware, including . . . impairments that are 'not severe' . . . when we

6

assess [a claimant's] residual functional capacity."). Additionally, the ALJ must "include a narrative discussion describing how the evidence supports each conclusion" as to the claimant's wok-related limitations. SSR 96-8p at *7. The ALJ must explain the basis for the limitations included in the RFC assessment with citations to "specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Id.*

Apart from adopting the state agency psychologists' opinion that Claimant's mental impairments were non-severe, the ALJ did not mention or consider the effects of Claimant's mental impairments whatsoever in the RFC analysis. (R. 24). Likewise, despite finding Claimant's carpal tunnel syndrome was a medically determinable non-severe impairment at step two, the ALJ did not mention carpal tunnel syndrome when assessing Claimant's RFC. (R. 21-25). Rather, the ALJ's RFC discussion focused exclusively on the impact of Claimant's severe physical impairments on her ability to work. Thus, the Court agrees the ALJ inadequately considered Claimant's non-severe carpal tunnel syndrome and depression/adjustment disorder in the RFC assessment. A clear and specific analysis of what, if any, impact Claimant's non-severe mental impairments had on the RFC was particularly important in this case, because no medical source opined as to Claimant's mental RFC, and the VE testified that an individual who was off-task more than 10% of the work day, absent from an unskilled job more than two days per month, or required unscheduled breaks outside the regular work schedule could not maintain competitive work. (R. 61, 65).

Moreover, the omission of a discussion regarding Claimant's non-severe depression/adjustment disorder and carpal tunnel syndrome demonstrates that the ALJ failed to provide a narrative discussion explaining the evidentiary basis and rationale for the RFC assessment as required by SSR 96-8p. For instance, the ALJ did not explain, what, if any work-

related limitations resulted from Claimant's non-severe depression/adjustment disorder and carpal tunnel syndrome. Additionally, the ALJ omitted skill level, task, instruction, social, and manipulative limitations from the RFC determination without explaining why Claimant's non-severe depression/adjustment disorder and carpal tunnel syndrome did not impose any limitations. Absent a discussion of how Claimant's non-severe impairments were accounted for in the RFC assessment, or an explanation why such impairments did not impose any functional limitations, the Court is unable to "credit [the ALJ's] conclusion with substantial evidence." *Wells,* 727 F.3d at 1071.

In sum, the ALJ erred by relying on his non-severity finding at step two "as a substitute for a proper RFC analysis" with respect to Claimant's non-severe mental impairments and carpal tunnel syndrome. *Id.* at 1065. Accordingly, the matter will be remanded for further proceedings consistent with this Order. *See id.* at 1071 (remanding for further proceedings "concerning the effect of [claimant's] medically determinable mental impairments on her RFC, and for further analysis at steps four and five, including any further hearing the ALJ deems necessary").

## VI. Conclusion

For the foregoing reasons, the Commissioner's decision finding Claimant not disabled is REVERSED and REMANDED for proceedings consistent with this Opinion and Order.

SO ORDERED this  27th  day of September, 2023.

_____
D. EDWARD SNOW
UNITED STATES MAGISTRATE JUDGE